**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KRYSTYNE FARRIS,<br><br>Plaintiff,<br>v.<br><br>INTUIT, INC.,<br><br>Defendant. | CIVIL ACTION NO. 3:25-CV-02028<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

On October 27, 2025, Plaintiff Krystyne Farris ("Farris") initiated this action by filing a complaint. (Doc. 1). On February 3, 2026, Farris filed the operative amended complaint against Defendant Intuit, Inc. ("Intuit"). (Doc. 8). Before the Court is Intuit's motion to dismiss. (Doc. 10). For the following reasons, Intuit's motion is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the amended complaint and, for purposes of the instant motion, is taken as true. (Doc. 8). Intuit is a California corporation which employed Farris from February 15, 2015, until November 8, 2023. (Doc. 8, ¶¶ 7, 10). From February 15, 2015, through August 2019, Farris worked as a part-time employee but in August 2019, Intuit hired Farris as a full-time employee. (Doc. 8, ¶ 11). Intuit continued to promote Farris until she was in a managerial role at the time of her termination. (Doc. 8, ¶ 11).

Farris suffers from various spinal conditions including bilateral foraminal stenosis, anterolisthesis, and bilateral pars defect. (Doc. 8, ¶ 12). In 2017, she was also diagnosed with a hernia. (Doc. 8, ¶ 12). These conditions limit Farris's ability to walk, stand, and bend. (Doc.

8, ¶ 12). Around May 2023, Farris's doctor discovered Farris had elevated liver enzymes and recommended additional testing on a suspicion of an autoimmune disorder. (Doc. 8, ¶ 13). Around mid-July 2023, Farris notified Intuit's rostering team, Damon Lou ("Lou") and Margaret Lambos ("Lambos"), that she required medical leave from approximately July 20, 2023, until September 1, 2023, in connection with her various conditions. (Doc. 8, ¶ 14).

When Farris returned from work in September 2023, she told her supervisor, Anthony Natale ("Natale") about her conditions. (Doc. 8, ¶ 15). In response, Natale directed Farris to submit an accommodations request to Intuit's human resources department. (Doc. 8, ¶ 16). Farris spoke with Susan Casilla ("Casilla"), Intuit's Senior Absence and Accommodations Specialist, about the need for a flexible work schedule due to her conditions. (Doc. 8, ¶ 16). After her conversation with Casilla, Farris determined that she did not need to submit a formal accommodations request because she could use her "sick time" to attend doctor's appointments. (Doc. 8, ¶ 16). After Farris's discussions with Casilla, Farris began to experience a pattern of hostility from her supervisors, which included Natale threatening to terminate her should she miss any meetings, regardless of whether her absence is related to her conditions. (Doc. 8, ¶¶ 17-18).

Around October 2023, Farris notified Natale that she needed to undergo a surgical biopsy on November 6, 2023, as further treatment and testing for her potential autoimmune disorder. (Doc. 8, ¶ 19). Farris met with Casilla to review her medical leave options. (Doc. 8, ¶ 20). Casilla directed her to consult with her physician and submit a formal accommodations request. (Doc. 8, ¶ 20). Casilla represented to Farris that she could not initiate Family and Medical Leave Act ("FMLA") leave for thirty days. (Doc. 8, ¶ 20). Farris's physician advised her to request FMLA leave, and Farris contacted Casilla to request FMLA leave. (Doc. 8, ¶

21). Casilla did not respond to Farris's FMLA leave request. (Doc. 8, ¶ 21). When Farris returned to work on November 8, 2023, Intuit terminated her for alleged "performance issues." (Doc. 8, ¶ 22).

On February 3, 2026, Farris filed the operative amended complaint alleging three counts under federal and state law. (Doc. 8). In Count I, Farris alleges Intuit is liable under the Americans with Disabilities Act ("ADA") for disability discrimination and retaliation. (Doc. 8, ¶¶ 24-27). In Count II, Farris alleges Intuit is liable under the FMLA for interference and retaliation. (Doc. 8, ¶¶ 28-31). In Count III, Farris alleges Intuit is liable under the Pennsylvania Human Relations Act ("PHRA") for disability discrimination and retaliation. (Doc. 8, ¶¶ 32-35).

On February 17, 2026, Intuit filed a motion to dismiss. (Doc. 10). On March 3, 2026, Intuit filed a brief in support. (Doc. 11). On March 17, 2026, Farris filed a brief in opposition. (Doc. 12). On March 31, 2026, Intuit filed a reply brief. (Doc. 13). Accordingly, this matter is ripe and ready for disposition.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents

incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for

which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

## III. DISCUSSION

Intuit avers that the Court should dismiss Farris's ADA and PHRA retaliation claims because Farris never engaged in a protected activity. (Doc. 11, at 5-6). Intuit also argues that the Court should dismiss Farris's ADA and PHRA discrimination claims because she does not allege that she was qualified for her position, had a disability, or that Intuit knew about a disability. (Doc. 11, at 6-8).

### A. FARRIS STATES A CLAIM FOR RETALIATION.

In Count I and III, Farris alleges Intuit is liable under the ADA and the PHRA for retaliation. (Doc. 8, ¶¶ 24-27, 32-25). Intuit argues that Farris cannot state a claim for retaliation because her formal Equal Employment Opportunity Commission ("EEOC") charge previously stated that she "decided not to follow through" on submitting accommodations requests, and thus, she did not engage in a protected activity. (Doc. 11, at 5-6). Farris counters that her requests for medical leave and conversations with Casilla constitute protected activities under the ADA and the PHRA. (Doc. 12, at 5-7).

The ADA and the PHRA prohibit employers from retaliating against employees for engaging in protected activity under each respective act. 42 U.S.C.A. § 12203(a); 43 P.S. § 955(d). ADA and PHRA retaliation claims are analyzed under the same standard. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (noting that courts "interpret the anti-retaliation provisions of the ADA . . . and PHRA . . . identically"). To state a claim

for retaliation under the ADA and the PHRA, a plaintiff must allege that "(1) [the] plaintiff . . . engaged in a 'protected activity,' (2) the plaintiff [was] subjected to an adverse employment action by the [defendant], and (3) a causal connection between the protected activity and the adverse employment action exists." *Dreibelbis v. Cnty. of Berks*, 438 F. Supp. 3d 304, 319 (E.D. Pa. 2020).

A plaintiff requesting accommodations constitutes a protected activity under the ADA and the PHRA. *See Dreibelbis*, 438 F. Supp. 3d at 319 (stating "'[p]rotected activity' under the ADA 'includes retaliation against an employee for requesting an accommodation'" (quoting *Barber v. Subway*, 131 F. Supp. 3d 321, 329 (M.D. Pa. 2015)). Unlike disability discrimination claims, ADA and PHRA retaliation claims do not require the plaintiff to establish that they are actually disabled. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003). Rather, the plaintiff only needs to establish they made a good faith request for an accommodation. *See Shellenberger*, 318 F.3d at 191 (stating "[t]he right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC . . . to prosecute an ADA retaliation claim for requesting reasonable accommodations, a plaintiff need not show that she suffers from an actual disability" (citations and internal quotations omitted)).

ADA and PHRA "accommodation request[s] need not be formal, be in writing, or invoke any particular 'magic words.'" *Sessoms v. Trs. of Univ. of Pennsylvania*, 739 F. App'x 84, 88 (3d Cir. 2018) (nonprecedential) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)). Requesting time off work to receive medical treatment or FMLA leave requests can constitute a protected accommodations requests under the ADA and the PHRA. *See Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156 (3d Cir. 2017) (noting that a FMLA leave

request may constitute protected activity under the ADA); *see also Dreibelbis*, 438 F. Supp. 3d at 319 (finding that a plaintiff's allegation that she requested FMLA leave related to her disability satisfied the protected activity requirement); *see also Wolf v. Progressive Pain Mgmt., LLC*, No. 24-2943, 2026 WL 311568, at *3 (3d Cir. Feb. 5, 2026) (nonprecedential) (stating "[a] good faith request for an accommodation, including a leave of absence, is protected activity under the ADA").

Intuit argues that Farris does not allege she engaged in a protected activity because in her EEOC charge, she stated that she "decided not to follow through" on submitting a formal accommodations request.[1] (Doc. 11, at 6; Doc. 11-1, at 4). However, in both the amended complaint and the EEOC charge, Farris alleges she requested time off to attend doctor's appointments. (Doc. 8, ¶16; Doc. 11-1, at 3-4). According to Farris, she intended to submit a formal accommodations request but realized she did not need to after she discussed using her "sick time" to attend doctor's appointments with Casilla, a human resources official. (Doc. 8, ¶ 16). Farris alleges that her requests to take time off to receive medical treatment related to her medical conditions and that she informed Natale and Casilla of her conditions. (Doc. 8, ¶¶ 15-16). Farris's allegations regarding her discussions with Natale and Casilla and her leave requests are sufficient to plead that she engaged in a protected activity. *See Capps*, 847 F.3d at 156 (noting that requesting leave can constitute protected activity under the ADA); *see also*

[1] Although Farris's EEOC charge is not attached to the amended complaint, the Court may consider EEOC filings while evaluating a motion to dismiss an employment claim. *See Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 n.5 (3d Cir. 2011) (finding that a district court properly dismissed employment claims based on the court's analysis of EEOC filings); *see also Twillie v. Erie Sch. Dist.*, No. CIV.A. 11-165, 2013 WL 4666072, at *5 (W.D. Pa. Aug. 30, 2013), *aff'd*, 575 F. App'x 28 (3d Cir. 2014) (stating "[t]he Court may properly consider documents from administrative proceedings before the EEOC in considering a motion to dismiss federal [employment] claims").

*Dreibelbis*, 438 F. Supp. 3d at 319 (noting the same); *see also* *Wolf*, 2026 WL 311568, at *3 (same).

Intuit avers that a request for leave to attend doctor's appointments is not always a request for reasonable accommodations under the ADA and the PHRA. (Doc. 13, at 4-7). According to Intuit, leave requests only constitute protected activities where a plaintiff establishes that she conveyed to her employer that the request related to a disability. (Doc. 13, at 4-7). In making this argument, Intuit relies on cases decided at the summary judgment phase where courts were able to evaluate a full record to determine what the plaintiff communicated with the defendant and whether those communications were sufficient to establish a protected activity.[2] (Doc. 13, at 4-7) (citing *Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 423 (E.D. Pa. 2022); *Capps v. Mondelez Glob. LLC*, 147 F. Supp. 3d 327, 340 (E.D. Pa. 2015), *aff'd*, 847 F.3d 144 (3d Cir. 2017)). At the motion to dismiss phase, however, the Court cannot evaluate such a record and must take all allegations in the complaint as true and make all inferences in favor of Farris. *See* *Dreibelbis*, 438 F. Supp. 3d at 317 n.22 (distinguishing summary judgment cases where courts determined that leave requests did not constitute protected activities and determining, in response to a motion to dismiss, that the plaintiff's alleged leave requests constituted a protected activity). Farris alleges that she spoke with both Natale and Casilla about submitting a formal accommodations request and only did not do

---

[2] The Court also notes that Intuit relies on the Eastern District of Pennsylvania's decision in *Capps v. Mondelez Global LLC*, 147 F. Supp. 3d 327, 340 (E.D. Pa. 2015). (Doc. 13, at 4). Although Third Circuit affirmed the Eastern District's decision in *Capps*, the Third Circuit noted that the district court erred to the extent it held that FMLA leave requests cannot constitute an accommodations request under the ADA. *See* *Capps*, 847 F.3d at 157 (stating "[w]e recognize that a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA, and to the extent that the District Court held otherwise, that was error" (citations omitted)).

so because her conversation with Casilla convinced her that using her sick leave would suffice. (Doc. 8, ¶¶ 15-16). These allegations are sufficient to plead that she engaged in a protected activity at this early stage. *See Dreibelbis*, 438 F. Supp. 3d at 317 n.22. Accordingly, the Court **DENIES** Intuit's motion to dismiss Farris's retaliation claims. (Doc. 8).

B. FARRIS STATES A CLAIM FOR DISABILITY DISCRIMINATION.

In Counts I and III, Farris also alleges that Intuit is liable under the ADA and the PHRA for disability discrimination. (Doc. 8, ¶¶ 24-27, 32-35). Intuit argues that Farris fails to state a claim for disability discrimination because she does not allege 1) that she has a disability, 2) that Intuit knew she was disabled, and 3) that she was otherwise qualified for her position. (Doc. 11, at 6-8). Farris counters that her spinal and autoimmune issues qualify as disabilities, she alleges she notified Intuit of her disabilities when she requested medical leave, and that her allegations that she worked for Intuit for years and was promoted multiple times establish she was qualified for her position. (Doc. 12, at 7-9).

The ADA provides that employers "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a). Similarly, the PHRA provides that it is unlawful "[f]or any employer because of. . . disability. . . to discharge from employment such individual . . . or to otherwise discriminate against such individual. . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment." 43 P.S. § 955(a). Like with retaliation claims, courts analyze ADA and PHRA discrimination claims under the same standard. *See Taylor*, 184 F.3d at 306 (stating "our analysis of an ADA claim applies equally to a PHRA claim").

To state a claim for disability discrimination, a plaintiff must allege they "(1) [are] disabled within the meaning of the ADA, (2) can perform essential functions of [their] job with or without reasonable accommodation, and (3) suffered an adverse employment action as a result of discrimination based on [their] disability." *Drummer v. Trs. of Univ. of Pennsylvania*, 286 F. Supp. 3d 674, 682 (E.D. Pa. 2017). Intuit argues that Farris does not allege that she was disabled as defined by the ADA or that Intuit knew about that disability. (Doc. 11, at 6-8). Intuit further avers that Farris does not allege she was qualified for her position. (Doc. 11, at 6-8).

**1. Farris pleads she is disabled and that Intuit knew about her disability.**

The ADA defines "disability" as follows:

The term "disability" means, with respect to an individual--

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1)

Relatedly, the ADA states major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). A plaintiff must identify a medical condition which limits a specific major life activity. *See Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 40 (3d Cir. 2018) (nonprecedential) (reversing a district court's dismissal of an ADA claim and finding that the plaintiff properly alleged they were disabled by identifying a medical condition and the specific life activities it limited); *see also Feliciano v. Coca-Cola Refreshments*

*USA, Inc.*, 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017) (finding a plaintiff failed to plead that she had a disability because she did not identify a specific way in which her medical condition limited a major life activity beyond "merely [reciting the ADA] standard"). While a defendant may not simply state that they are disabled, they are not required, "at [the] early pleading stage, to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009); *see also Ruggiero*, 736 F. App'x at 40. Further, at the motion to dismiss stage, it is premature for the Court to conduct an in-depth analysis of the severity or permanency of a medical condition, and the Court must accept all of the plaintiff's allegations regarding their condition as true. *See Burbach v. Arconic Corp.*, 561 F. Supp. 3d 508, 520 (W.D. Pa. 2021) (rejecting a defendant's argument that a plaintiff's medical condition was too transitory and minor to constitute a disability and noting that conducting an in-depth analysis of the severity and temporary nature of the plaintiff's condition would be premature at the pleadings).

According to Intuit, Farris fails to allege she suffered from a qualifying disability because she "pleads only that she suffered from various temporary spinal conditions and that she sought testing for an autoimmune disorder (not that she had an autoimmune disorder)." (Doc. 11, at 7). However, Farris alleges that she "suffers from several spinal conditions, including, Bilateral Foraminal Stenosis, Anterolisthesis, and Bilateral Pars Defect" which limit her ability to stand, walk, and bend. (Doc. 8, ¶ 12). Notably, Farris does not allege that she previously suffered from these conditions, but rather that she "suffers" from them in the present. (Doc. 8, ¶ 12). Farris also alleges that she was diagnosed with a hernia in 2014 which limits her ability to walk, stand, and bend. (Doc. 8, ¶ 12). Farris further alleges that in May 2023, her physician discovered that she had elevated liver enzymes, which led her physician

to suspect that Farris has an autoimmune disorder. (Doc. 8, ¶ 14). Admittedly, Farris does not allege how her livery-enzyme related condition limited a major life activity. (Doc. 8, ¶ 14). However, Farris's identification of specific spinal conditions and allegations that those conditions limit specific life activities such as standing, walking, and bending are sufficient to allege that she is disabled as defined by the ADA at this stage. (Doc. 8, ¶ 12); *see Fowler*, 578 F.3d at 213; *see also Ruggiero*, 736 F. App'x at 40. The Court must accept Farris's allegations as true, and it would be premature for the Court to engage in an in-depth inquiry into Farris's alleged spinal conditions to evaluate the severity and permanence of the conditions.[3] *See Burbach*, 561 F. Supp. 3d at 520.

The Court also disagrees with Intuit's assertion that Farris "[a]t best, [alleges] she told various supervisors that she at one time suffered from temporary conditions and suspected she had a different condition." (Doc. 11, at 7). Farris alleges that she disclosed her "diagnoses," rather just one specific diagnosis, to Intuit's human resources officials and her supervisor. (Doc. 8, ¶¶ 14-16). Farris alleges that she met with Casilla, a human resources officer, around September 2023 to discuss potential accommodations for all her conditions, which include her spinal conditions that limit her ability to walk, stand, and bend. (Doc. 8, ¶

[3] Intuit urges the Court to rely on the Eastern District of Pennsylvania's decision in *Long v. Spalding Auto. Inc.*, 337 F. Supp. 3d 485, 491 (E.D. Pa. 2018), where the court determined that a plaintiff's alleged back conditions were temporary and non-chronic. (Doc. 11, at 7). However, in *Long*, the court was able to evaluate specific medical documents the plaintiff referenced in his complaint and noted that all the documents indicated that the plaintiff's conditions were temporary. 337 F. Supp. 3d at 490-91. The Court has no such documents before it. At this stage, it would be improper for the Court, without a complete record and evidence regarding Farris's conditions, to independently research Farris's conditions based on Intuit's assertion that they are all temporary. *See Burbach*, 561 F. Supp. 3d at 520.

16). Accordingly, Farris pleads that she is disabled and that she informed Intuit of her disability. (Doc. 8, ¶¶ 12-16); *see Fowler*, 578 F.3d at 213; *see also Ruggiero*, 736 F. App'x at 40.

**2. Farris pleads she was qualified for her position.**

Intuit also argues that the Court must dismiss Farris's disability discrimination claim because she does not plead she was otherwise qualified for her position. (Doc. 11, at 8). Courts apply a two-part test to determine whether a plaintiff is qualified for their position. *See Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998); *see also Kiniropoulos v. Northampton Cnty. Child Welfare Serv.*, 917 F. Supp. 2d 377, 387 (E.D. Pa. 2013). Courts must evaluate the complaint and determine "(1) whether the [plaintiff] satisfies the prerequisites for the position, by possessing the appropriate educational background, employment experience, skills and licenses; and (2) whether the [plaintiff] can perform the essential functions of the position, with or without reasonable accommodation." *Kiniropoulos*, 917 F. Supp. 2d at 387. At the pleading stage, a plaintiff may establish they were qualified for their position by alleging they had extensive experience in their position. *See Sorgini v. Wissahickon Sch. Dist.*, 274 F. Supp. 3d 291, 299 (E.D. Pa. 2017) (stating "an individual may be qualified to perform the essential functions of a job based on relevant job experience . . . Plaintiff has seven years of experience as a building supervisor; thus, he [pleads] he was qualified (citations omitted); *see also Fortes v. Boyertown Area Sch. Dist.*, No. CIV.A. 12-6063, 2014 WL 3573104, at *10 (E.D. Pa. July 18, 2014) (noting that a plaintiff established she was qualified to work as a teacher because she alleged she had years of teaching experience). An in-depth analysis of the plaintiff's qualifications is generally better suited for summary judgment. *See Burbach*, 561 F. Supp. 3d at 520 (rejecting a defendant's arguments that the plaintiff could not perform the essential functions of their position with a remote work accommodation because the plaintiff alleged

they could and an in-depth analysis would be "better suited for determination upon a completed record").

Farris alleges that she worked for Intuit for over eight and a half years, and in that time, she was promoted to work on a full-time basis and received four other promotions until she was promoted to the role of Manager I before her termination. (Doc. 8, ¶¶ 11-12). Farris further alleges that although Intuit claimed to terminate her for "performance issues," this claim is unfounded. (Doc. 8, ¶¶ 14-23). Intuit argues that Farris's allegations do not establish she was qualified because she does not explicitly state she could continue performing the essential functions of her job or list what those functions are. (Doc. 11, at 8; Doc. 13, at 8). However, at this stage, Farris's allegations that 1) she worked at Intuit for over eight and a half years, 2) her performance was so satisfactory that Intuit promoted her to a full-time employee and then four other times, and 3) she had no performance issues warranting dismissal are sufficient for the Court to conclude that was qualified for her position. *See Burbach*, 561 F. Supp. 3d at 520 (noting that an in-depth inquiry into whether a plaintiff could continue to perform the essential functions of their position is better suited for summary judgment); *see also Sorgini*, 274 F. Supp. 3d at 299 (finding that allegations that the plaintiff had years of experience established that a plaintiff was qualified); *see also Fortes v. Boyertown Area Sch. Dist.*, No. CIV.A. 12-6063, 2014 WL 3573104, at *10 (finding the same). Accordingly, the Court **DENIES** Intuit's motion to dismiss Farris's disability discrimination claims. (Doc. 10).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Intuit's motion to dismiss is **DENIED**. (Doc. 10).

An appropriate Order follows.

**BY THE COURT:**

**Dated: August 6, 2026**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**